# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. KNAPP, | No. CV 17-3859-PLA |
| Petitioner, | |
| v. | **MEMORANDUM DECISION, ORDER AND JUDGMENT** |
| L.A. COUNTY SHERIFF'S DEPT., | |
| Respondent. | |

## I
## PROCEDURAL HISTORY

On January 17, 2017, in the Los Angeles County Superior Court, petitioner pleaded no contest to one count of receiving stolen property (Cal. Penal Code § 496d(a)), and admitted serving one prior prison term within the meaning of California Penal Code § 667.5(b). He was sentenced to a term of four years in the county jail. (ECF No. 1 at 4; ECF No. 20 at 63, 71-72, 115). Petitioner did not file an appeal.[1]

---

[1] Although petitioner in his Petition indicates that he appealed his conviction, the record shows that he filed a habeas petition in the California Court of Appeal, and not a direct appeal.
(continued...)

1 On March 20, 2017, petitioner filed a habeas petition in the Los Angeles County Superior Court, which was denied on April 7, 2017. (Lodgment Nos. 2, 3). On June 7, 2017, petitioner filed a habeas petition in the California Court of Appeal, which was denied on June 14, 2017, with a citation to In re Swain, 34 Cal.2d 300, 304 (1949). (Lodgment Nos. 4, 5). On October 16, 2017, petitioner filed a habeas petition in the California Supreme Court, which was denied on February 28, 2018. (Lodgment Nos. 6, 7).

On May 23, 2017, petitioner filed a Petition for Writ of Habeas Corpus in this Court. (ECF No. 1). On June 19, 2017, he filed a First Amended Petition. (ECF No. 9). On October 13, 2017, he filed a Second Amended Petition. (ECF No. 20). On January 8, 2018, he filed the operative Third Amended Petition ("TAP"). (ECF No. 44).

On January 11, 2018, respondent filed a Motion to Dismiss, arguing that the Third Amended Petition contained unexhausted claims. The Court denied the Motion without prejudice to respondent reasserting the exhaustion argument in the Answer. (ECF Nos. 46, 90).

On July 16, 2018, respondent filed an Answer to the Third Amended Petition. (ECF No. 99). On November 16, 2018, petitioner filed an "Answer," which the Court construes as his Reply. (ECF No. 108).

Both parties have consented to have the undersigned Magistrate Judge conduct proceedings in this matter. (ECF Nos. 26, 41, 42).

This matter is deemed submitted and is ready for a decision.

**II**

**PETITIONER'S CONTENTIONS**

1. Petitioner requests leave to file his Third Amended Petition. (ECF No. 44 at 5, 10).
2. Petitioner requests that the Court appoint counsel. (ECF No. 44 at 5-6, 10).

---

[1](...continued)
(See Lodgment Nos. 4, 5).

3. The denial of petitioner's Trombetta[2] motion was constitutional error. (ECF No. 44 at 11).

4. Petitioner requests court transcripts. (ECF No. 44 at 6, 12-13).

5. Petitioner's sentence enhancement pursuant to California Penal Code § 667.5(b) was illegally imposed. (ECF No. 44 at 6, 16-17).

6. Petitioner requests discovery from the trial and appellate courts, and requests the appointment of counsel. (ECF No. 44 at 18-19).

## III

## **STANDARD OF REVIEW**

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Therefore, the Court applies the AEDPA in its review of this action. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of

---
[2] California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

3

> law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062. The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; accord: Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n. 7, that "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." Id. at 25; Early v. Packer, 537 U.S. 3, 11, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. Williams, 529 U.S. at 412; Moses v. Payne, 555 F.3d 742, 759 (9th Cir. 2009). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

A federal habeas court conducting an analysis under § 2254(d) "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). In other words, to obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103. Additionally, the United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Here, petitioner raises six grounds for relief. As explained infra, Grounds One and Two are not cognizable in a federal habeas proceeding. Additionally, petitioner's claim in Ground Three is barred pursuant to Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), while his claim in Ground Five only implicates state law sentencing issues that are not cognizable on federal habeas review. To the extent petitioner raised his remaining claims in his state habeas petitions, the Court notes that the California Court of Appeal issued a denial citing Swain, on the ground that petitioner's claims were not pled with sufficient particularity to obtain relief, while the California Supreme Court issued a silent denial. (Lodgment Nos. 5, 7). See Stancle v. Clay, 692 F.3d 948, 958 (9th Cir. 2012). In light of the Swain denial, the Court must "independently [ ] examine" petitioner's state habeas petition to determine whether he met the federal exhaustion standard of "fair presentation" to the state's highest court. See Kim v. Villalobos, 799 F.2d 1317, 1319-20 (9th Cir. 1986). Here, however, because petitioner's remaining claims are clearly without merit, it is not necessary to determine whether petitioner satisfied the exhaustion requirement, as the claims fail even under de novo review. Berghuis v. Thompkins,

560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) (where it is unclear whether AEDPA deference applies, court may deny writ of habeas corpus under § 2254 by engaging in de novo review because habeas petitioner will not be entitled to writ under § 2254 if claim can be rejected on de novo review); see also Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (when there is no state court decision on the merits, habeas review is de novo).

## IV

## DISCUSSION

**GROUNDS ONE AND TWO ARE NOT COGNIZABLE**

In Ground One, petitioner seeks leave to file his Third Amended Petition. (ECF No. 44 at 5, 10). In a federal habeas proceeding, the court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); see also 28 U.S.C. § 2254(a). Accordingly, Ground One is not cognizable here. In any event, petitioner's request is moot as the Third Amended Petition has been filed and is the operative pleading in this matter.

In Ground Two, petitioner requests that the Court appoint counsel. (ECF No. 44 at 5-6, 10). Not only does Ground Two not amount to a cognizable claim in a federal habeas proceeding, but the Court has already denied petitioner's prior requests for the appointment of counsel. (See, e.g., ECF Nos. 29, 30, 33, 34, 48, 49). As the Court informed petitioner in those previous denials, he has not shown that the "circumstances of [his] case indicate that appointed counsel is necessary to prevent due process violations." Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); see 18 U.S.C. § 3006A(a)(2) (providing that a district court has discretion to appoint counsel for state habeas corpus petitioners when it determines "that the interests of justice so require"); see Anderson v. Heinze, 258 F.2d 479, 484 (9th Cir. 1958) ("Except under most unusual circumstances, an attorney ought not to be appointed by a federal court for the purpose of trying to find something wrong with a state judgment of conviction."). For the same reason, petitioner's request for appointment of counsel is again denied.

/

/

/

/

**GROUND THREE: TROMBETTA VIOLATION**

In Ground Three, petitioner contends that, prior to his plea of no contest, the trial court erred in denying his Trombetta motion after the motor home, which was the stolen property that petitioner was convicted of buying or receiving, was destroyed or lost.[3] (ECF No. 44 at 6, 11-12). Petitioner explains that he needed access to the motor home in order to fingerprint the driver's side and steering column to prove that he never drove the vehicle.[4] For numerous reasons, petitioner's Trombetta claim fails.

"As a general rule, one who voluntarily and intelligently pled guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations." Mitchell v. Superior Court, 632 F.2d 767, 769 (9th Cir. 1980). As stated by the United States Supreme Court in Tollett, 411 U.S. at 267:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea[.]

This principle applies equally to defendants who plead no contest. Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir. 1992). When a criminal defendant enters a plea of no contest on the advice

---

[3] Petitioner's Trombetta motion was denied by the trial court on November 18, 2016. (See ECF No. 108 at 29, 50).

[4] Based on the preliminary hearing transcripts, the facts underlying petitioner's conviction are as follows: police officers in Palmdale, California, responded to a location where they found petitioner inside a motor home. (ECF No. 20 at 29-31, 50). Twelve marijuana plants and a useable amount of methamphetamine were inside the motor home. (Id. at 32-24, 55). Petitioner told the officers that he was growing the marijuana for medicinal purposes, and that the motor home "might be stolen." (Id. at 35, 52-53). Petitioner also stated that he was homeless and was living in the vehicle. (Id. at 54). During their investigation, the police spoke to the manager of an RV company located in Westminster, California, which owned the motor home. The manager told police that petitioner "had no authorization to use the vehicle in any capacity." (Id. at 38).

of counsel, he may only attack the voluntary and intelligent character of his plea by showing that he entered a plea based on counsel's advice that was below the constitutional standard of competence demanded of defense attorneys. See Premo v. Moore, 562 U.S. 115, 123-28, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).[5]

Here, petitioner contends that misconduct occurred because a government officer failed to preserve the motor home, and petitioner was therefore prevented from fingerprinting the interior of the vehicle to prove that he never drove it. Pursuant to Tollett, this claim involves a pre-plea action that is barred from federal habeas review.[6]

---

[5] Since Tollett, the United States Supreme Court has recognized that the bar on attacking pre-plea constitutional errors does not apply when the defect in question is a "jurisdictional" one that implicates the government's power to prosecute the defendant. United States v. Johnston, 199 F.3d 1015, 1019 n. 3 (9th Cir. 1999) ("The Court has subsequently limited the scope of those exceptions to include only those claims in which, judged on the face of the indictment and record, the charge in question is one which the state may not constitutionally prosecute.") (citing United States v. Broce, 488 U.S. 563, 574-76, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)); see also Menna v. New York, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (holding that the bar on collateral challenges to pre-plea errors did not apply to a claim that the indictment under which a defendant pleaded guilty placed him in double jeopardy); Blackledge v. Perry, 417 U.S. 21, 30-31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding that a guilty plea did not foreclose a claim that a defendant was vindictively prosecuted). Here, no "jurisdictional" exception to the Tollett rule applies, as petitioner's claim in Ground Three does not concern the power of the state to prosecute him.

[6] For the same reasons, to the extent petitioner in this habeas action seeks to challenge the trial court's handling of his motion to dismiss, filed in the trial court on October 26, 2016, his claim is barred pursuant to Tollett. (See ECF No. 108 at 2).
To the extent petitioner in his Reply challenges the voluntary nature of his plea, that claim fails as well. (See ECF No. 108 at 15). As a threshold matter, petitioner's attempt to raise a new claim in his Reply is improper. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."); see also Rule 2(c)(1) of Rules Governing Section 2254 Cases (habeas petition must "specify all the grounds for relief available to the petitioner"). A district court has discretion to consider or not consider a claim raised for the first time after the filing of the petition. See Brown v. Roe, 279 F.3d 742, 745-46 (9th Cir. 2002). Here, the Court exercises its discretion to consider the new claim.
To be valid, a plea must be both voluntary and intelligent. United States v. Hernandez, 203 F.3d 614, 618-19 (9th Cir. 2000) (citing Tollett, 411 U.S. at 267); see also Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "A plea is 'involuntary' if it is the product of threats, improper promises, or other forms of wrongful coercion." Hernandez, 203 F.3d
(continued...)

In any event, petitioner's Trombetta claim fails on the merits. Law enforcement officials generally have a duty to preserve and collect "evidence that might be expected to play a significant role in the suspect's defense." Trombetta, 467 U.S. at 488; Miller v. Vasquez, 868 F.2d 1116, 1120 (9th Cir. 1989) (holding that bad faith failure to collect potentially exculpatory evidence would violate Due Process Clause). However, this duty to preserve or collect evidence applies only to "material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources." Cooper v. Calderon, 255 F.3d 1104, 1113 (9th Cir. 2001) (citing Trombetta, 467 U.S. at 489).

In addition, the government's failure to preserve or collect potentially exculpatory evidence rises to a due process violation only where the "criminal defendant can show bad faith." Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); Miller, 868 F.2d at 1120-21. Bad faith is shown where "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Youngblood, 488 U.S. at 58.

The record here shows that the superior court denied petitioner's Trombetta on the basis that petitioner failed to demonstrate that the motor home had exculpatory value. (ECF No. 108 at 50). The superior court's denial was not objectively unreasonable. At the preliminary hearing,

---

[6](...continued)
at 619. A plea "is 'unintelligent' if the defendant is without the information necessary to assess intelligently" the consequences of the plea. Id. at 619 & n.7.

A defendant's representations at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). At petitioner's plea hearing, petitioner was informed that his maximum exposure if he went to trial was nine years and six months. Petitioner then agreed to the plea agreement with a sentence of four years (plus 418 days of credit). (ECF No. 20 at 67-68). He expressly acknowledged that he understood the charges involved in the plea agreement, as well as his constitutional rights and consequences of the plea. Petitioner denied that anyone threatened him or made any special promises to induce him to plead no contest. (Id. at 68-72). "Solemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74. Moreover, when a defendant denies any threats or coercions during the plea colloquy, "[c]ourts generally consider such responses to be strong indicators of the voluntariness of the defendant's guilty plea." Sanchez v. United States, 50 F.3d 1448, 1455 (9th Cir. 1995). Additionally, the trial court determined petitioner entered his plea freely and voluntarily. (ECF No. 20 at 71). Petitioner in the Reply did not proffer any evidence indicating that he was coerced into accepting the plea agreement. Based on the foregoing, the Court finds that petitioner has not made a showing that his plea was involuntary.

testimony established that two police officers found petitioner inside the stolen motor home. Petitioner told the officers that he was living in the motor home, that the motor home "might be stolen," and that he was growing medicinal marijuana plants in the motor home. In his Trombetta claim, petitioner represents that he never drove the motor home, and sought to fingerprint the motor home to prove that he never touched the steering column. The identity of the driver, however, was not relevant to petitioner's conviction for receipt of stolen property, as proving that petitioner actually drove the motor home was not an element of the charged offense.[7] Thus, contrary to petitioner's claim, a fingerprint analysis of the motor home would not have exonerated him. In turn, petitioner cannot demonstrate, had the motor home been available for fingerprinting during the time of his criminal proceedings, that the outcome of his case would have been any different. Moreover, there is no indication of bad faith on the part of the police or prosecution, i.e., that they knew of the exculpatory value of the evidence and yet failed to preserve it. Accordingly, since petitioner has failed to show both that the motor home was exculpatory, and that the police or prosecution acted in bad faith in failing to preserve it, there was no Trombetta violation.

For these reasons, habeas relief is denied for Ground Three.

**GROUNDS FOUR AND SIX:         REQUEST FOR TRANSCRIPTS**

In Grounds Four and Six, petitioner seeks transcripts from his state court proceedings and discovery. (ECF No. 44 at 12, 18-19).

This Court has granted petitioner numerous extensions of time in order for him to obtain transcripts. Based on petitioner's Reply, it appears that he has now obtained the transcripts he had been seeking. (ECF No. 108 at 8).

---

[7] Section 496d(a) of the California Penal Code states in relevant part: "Every person who buys or receives any motor vehicle . . . that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any motor vehicle . . . from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment . . . for 16 months or two or three years or a fine of not more than ten thousand dollars ($10,000), or both, or by imprisonment in a county jail not to exceed one year or a fine of not more than one thousand dollars ($1,000), or both."

To the extent petitioner seeks additional transcripts, he has not shown a basis for habeas relief. The Supreme Court has held that due process and equal protection require that indigent criminal defendants be provided with free transcripts of their trials for use on direct appeal. See Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); Griffin v. Illinois, 351 U.S. 12, 18-20, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (per curiam). Here, petitioner attached the transcripts from his preliminary hearing and from his plea hearing to his Second Amended Petition. (See ECF No. 20 at 24-74). In his Reply, he attached a transcript of a superior court proceeding that took place on November 18, 2016, during which his Trombetta motion was heard and denied.[8] To the extent petitioner seeks additional transcripts, he does not specify which transcripts he is missing, and fails to identify what claims he would pursue if he obtained additional transcripts.

Moreover, to the extent petitioner seeks "discovery," a habeas petitioner is not entitled to discovery as an ordinary matter of course. Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997); see also Harris v. Nelson, 394 U.S. 286, 295, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969) (noting that the "broad discovery provisions" of the Federal Rules of Civil Procedure do not apply in habeas proceedings); Campbell v. Blodgett, 982 F.2d 1356, 1358 (9th Cir. 1993) ("[T]here simply is no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter."). "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts; see Bracy, 520 U.S. at 902-04 (a habeas petitioner has the right to obtain discovery only upon a showing of "good cause."); Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997) ("[D]iscovery is available to habeas petitioners at the discretion of the district court judge for good cause shown."). Here, petitioner does not describe with any specificity what discovery he seeks and how the discovery would impact his grounds for relief. Moreover, the Court notes that his claims presented in the TAP can

---

[8] Respondent in the Answer incorrectly represents that because petitioner pleaded no contest and did not appeal, there are no transcripts. (ECF No. 99 at 2).

11

be properly considered by the Court without the aid of any additional transcripts or discovery. Accordingly, petitioner has not demonstrated good cause for discovery, or in turn, that he has suffered any prejudice from the lack of any additional, unidentified transcripts and/or discovery.

For these reasons, Grounds Four and Six fail.

**GROUND FIVE:     ILLEGAL SENTENCE ENHANCEMENT**

Petitioner alleges in Ground Five that his one-year sentence enhancement imposed pursuant to California Penal Code § 667.5(b) was illegal in light of Proposition 57, and that he has not received the correct amount of custody credits. (ECF No. 44 at 6, 16-17).

**A.     Proposition 57**

Petitioner raised this claim in a habeas petition filed in the Los Angeles County Superior Court, which issued the following denial on April 7, 2017:

> Proposition 57 only provides an inmate who has completed his base term with a hearing before the Board of Parole Hearings (Cal. Const., Art. 1, Sec. 32(a)). There is no resentencing option in the Superior Court. It does not appear petitioner has completed his base term to even qualify for a hearing before the Parole Board as his sentencing on this case occurred on 1/17/17.

(Lodgment No. 2).

Proposition 57, which was approved by California voters in November 2016, amended the California Constitution to add Section 32 to Article I, making nonviolent adult offenders "eligible for parole consideration after completing the full term for [their] primary offense[s]."[9] Cal. Const. art. I, § 32(a)(1).

California cases addressing the application of Proposition 57 have "uniformly state[d] that Proposition 57 creates a mechanism for parole consideration, not a vehicle for resentencing." Daniels v. California Dep't of Corr. and Rehab., 2018 WL 489155, at *4 (E.D. Cal. Jan. 19, 2018). Thus, at most, Proposition 57 provides for expanded eligibility of parole for certain convicted

---

[9] "Primary offense" is defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." Cal. Const., art. I, § 32(a)(1)(A).

felons. It "does not require or provide any mechanism for state law prisoners to be resentenced by the courts in which they were convicted." Travers v. State of Cal., 2018 WL 707546, at *3 (N.D. Cal. Feb. 5, 2018).

Based on the above, the Court concludes that petitioner's Proposition 57 claim does not challenge the constitutional validity of his conviction or the sentence imposed as a result of that conviction. In any event, his Proposition 57 claim is not cognizable under federal habeas review because petitioner is only asserting a violation or misinterpretation of state law and Section 2254 provides a remedy only for the violation of the Constitution or laws or treaties of the United States.[10] Swarthout v. Cooke, 562 U.S. 216, 222, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) ("the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts").

**B.     Custody Credits**

The Court next considers petitioner's claim seeking milestone credits and Plata/Coleman[11] credits. "Milestone Completion Credits" are awarded in California prisons to inmates who achieve "a distinct objective of approved rehabilitative programs, including academic programs, substance abuse treatment programs, social life skills programs, Career Technical Education programs, Cognitive Behavioral Treatment programs, Enhanced Outpatient Program group module treatment programs, or other approved programs with similar demonstrated rehabilitative qualities." Cal.

---

[10] Additionally, to the extent petitioner seeks an order requiring prison officials to consider if he is eligible for parole, he may not seek such an order by way of a federal habeas corpus petition. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." See Nettles v. Grounds, 830 F.3d 922, 927 (9th Cir. 2016) (en banc). A habeas petition is the exclusive vehicle for claims brought by state prisoners that fall within "the core of habeas." Id. Conversely, "a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus." Id. Where success on a petitioner's habeas claim would not necessarily lead to his immediate or earlier release from custody, the claim does not fall within "the core of habeas corpus." Id. at 934-35. In other words, a finding that petitioner was wrongly denied consideration for parole pursuant to Proposition 57 would not necessarily impact the duration of his confinement, and therefore his claim cannot be brought in a federal habeas petition.

[11] See infra.

13

Code Regs. tit. 15, § 3043.3(a). Milestone credits are awarded in increments of not less than one week, and "shall advance an inmate's release date if sentenced to a determinate term or advance an inmate's initial parole hearing date . . . if sentenced to an indeterminate term with the possibility of parole." Id., § 3043.3(c).

It also appears that petitioner seeks credits pursuant to a February 10, 2014, order issued by a federal three-judge court "requiring California to implement specific measures to reduce the prison population, including, 'increasing credits prospectively for non-violent second-strike offenders and minimum custody inmates.' [The order] specifies '[n]on-violent second-strikers will be eligible to earn good time credits at 33.3% and will be eligible to earn milestone credits for completing rehabilitation programs.'" Jones v. Director of Corrections, 2018 WL 985369, at *6 n.13 (S.D. Cal. Feb. 20, 2018) (citations omitted).

As set forth in Miller v. Rickley, 2016 WL 7480265, at *3 (C.D. Cal. Nov. 22, 2016), the February 10, 2014, order referenced above stemmed from two prisoner civil rights class actions that were ultimately consolidated before the three-judge court:

> One of those actions, Coleman v. Brown, No. S-90-0520-KJM-DB (E.D. Cal.), involves a class of state prisoners with serious mental illnesses. See Brown v. Plata, 563 U.S. 493, 506, 131 S. Ct. 1910, 179 L.Ed. 2d 969 (2011). The Coleman district court determined that conditions in the California prisons violated the Eighth Amendment. See Coleman v. Wilson, 912 F. Supp. 1282 (E.D. Cal. 1995). The district court appointed a Special Master to oversee remedial efforts, but conditions had not sufficiently improved after a number of years, and the Special Master attributed this to overcrowding in the prisons. See 563 U.S. at 506-07. [¶] The other class action, Plata v. Brown, No. C 01-1351[-]THE (N.D. Cal.), involves a class of state prisoners with serious medical conditions. See 563 U.S. at 507. In Plata, the state conceded that deficiencies in medical care in state prisons violated the Eighth Amendment and stipulated to a remedial injunction. See id. However, the state failed to comply with the injunction, and the district court appointed a Receiver to oversee remedial efforts. Id. Prison conditions remained deficient after several years, and like the Coleman Special Master, the Plata Receiver noted the impact of overcrowding. Id. at 507-09.

Petitioner's claim regarding milestone and Plata/Coleman credits fails. A petitioner may seek federal habeas relief from a state court conviction or sentence only if he is contending that he is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68. "Plata and Coleman do not provide an independent constitutional platform upon which [a] [p]etitioner may premise a cognizable federal habeas claim."

14

Lopez v. Ndoh, 2016 WL 3418432, at *2 (E.D. Cal. June 22, 2016); Miller, 2016 WL 7480265, at *6 (Plata/Coleman order did not "expand a habeas petitioner's constitutional rights" and "is not clearly established supreme court authority, so cannot provide habeas relief."). Moreover, matters relating solely to the interpretation and/or application of state law generally are not cognizable on federal habeas review. See Rhoades v. Henry, 611 F.3d 1133, 1142 (9th Cir. 2010) ("violations of state law are not cognizable on federal habeas review"). Petitioner's claim that he was not awarded milestone credits implicates only state law questions, and thus is not cognizable in this action. See, e.g., Robison v. CDCR, 2018 WL 6329661, at *3 (E.D. Cal. Dec. 4, 2018) ("Federal habeas challenges to CDCR's awarding and calculation of custody credits are regularly rejected as non-cognizable by the district courts."); Mason v. Holt, 2016 WL 6136076, at *5 (E.D. Cal. Oct. 21, 2016) ("To the extent petitioner is alleging that state authorities violated state law in failing to award him the correct amount of time credits . . ., his claims are not cognizable in this federal habeas action.").

For these reasons, Ground Five does not warrant habeas relief.

**CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a certificate of appealability ("COA") when it denies a state habeas petition. See also 28 U.S.C. § 2253(c).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A COA may issue "only if . . . [there is] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (citation omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000). Thus, "[w]here a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

The Court concludes that, for the reasons set out above, jurists of reason would not find the Court's assessment of petitioner's claims debatable or wrong. Accordingly, a certificate of appealability is denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

## V

## **ORDER**

For the foregoing reasons, IT IS SO ORDERED AND ADJUDGED that Judgment is entered denying and dismissing the Third Amended Petition with prejudice. A certificate of appealability is also denied.

DATED: December 11, 2018

*Paul L. Abrams*

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE